## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

**THOMAS KEITH COLEMAN**                                                               **PLAINTIFF**

**VERSUS**                                   **CIVIL ACTION NO. 1:19cv24-LG-RHW**

**KEITH HAVARD,** *et al.*                                                       **DEFENDANTS**

### REPORT AND RECOMMENDATION

Before the Court is [37] a November 6, 2019 motion filed by Defendants Sheriff Keith Havard, Warden Bobby Fairley, Captain John Moran, Officer Terry Rogers and Derrick Eubanks seeking summary judgment in this 42 U.S.C. § 1983 prisoner civil rights lawsuit filed by Thomas Keith Coleman on January 22, 2019.[1] Coleman's claims arise out of his incarceration at George County Regional Correctional Facility (GCRCF) in 2017. Coleman contends Defendants violated his constitutional right to adequate medical care by failing to transport him to free-world medical appointments for treatment and/or in furtherance of his pending worker's compensation claim for an on-the-job injury he sustained approximately a year before his arrest. Defendants' motion seeks dismissal of the action because Coleman failed to exhaust administrative remedies before filing suit.

### Facts and Procedural History

Following his arrest on April 27, 2017 for kicking in a door to a home with intent to kidnap the occupant and for a probation violation, Coleman was confined in GCRCF. According

---

[1] When he dated and signed his complaint on January 14, 2019, Coleman was at Central Mississippi Correctional Facility (CMCF). [1] He was transferred back to GCRCF April 19, 2019 [10]; and returned to CMCF on November 7, 2019. [40] During his confinement, the MDOC website showed his tentative release date as April 26, 2020 when he was apparently released. Although the website has not shown Coleman as an inmate since April 29, 2020, he has never changed his address from CMCF.

to his complaint, Coleman had sustained a free-world work related injury on February 18, 2016, and had hired a lawyer to pursue a worker's compensation claim for same. While he was undergoing rehabilitation for those injuries, he was found to have an ACL injury to his left knee. Coleman alleges he saw his orthopedist in Biloxi on April 17, 2017 to receive orders for knee surgery, but it was delayed due to an infection. He scheduled an appointment for May 21, 2017, however he was arrested on April 27, 2017 and confined in GCRCF.

Coleman alleges he told GCRCF Nurse Eubanks about his appointment, but prison officials did not take him to his doctor in Biloxi. He claims Defendants at GCRCF refused his requests for knee surgery, which he believes resulted in his being forced to accept a less than optimum settlement of his worker's compensation claim. He attaches to his February 19, 2019 amended complaint a letter from the insurer declining his offer to settle his worker's compensation claim for $150,000. [5-1] Coleman admitted in his original complaint that GCRCF has an administrative grievance procedure, and stated he filed a grievance for denial of medical care, although he concedes he filed no appeal regarding the grievance.[2] Coleman seeks $150,000 damages and $1,000,000 punitive damages from each defendant in their official and individual capacities "for neglegance (*sic*)." [1], [5]

On September 23, 2019 Defendants responded to the lawsuit, denying any violation of Coleman's rights. [23] Approximately six weeks later, Defendants filed the motion now before the Court, seeking dismissal of the case due to Coleman's failure to exhaust administrative remedies before filing suit. In support of their motion, Defendants submit the affidavit of Terry Rogers, Administrative Assistant at GCRCF, a copy of the facility's Inmate Handbook, and a copy of Coleman's jail file. In response to Defendants' motion, Coleman has reiterated the

---

[2] Coleman alleges he did not appeal because he feared retaliation from security staff. He claims the warden brought his Inmate Request back to him and told him the matter had been addressed.

allegations of his complaints, but has presented no competent summary judgment evidence to defeat the motion. [44]

## Summary Judgment Standard

Summary judgment is required under FED.R.CIV.P. 56 "if the movant shows there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Material facts are those which affect the outcome of the suit under governing law; a genuine dispute exists when the evidence is such that a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). On a motion for summary judgment, the Court views the evidence and draws reasonable inferences most favorably to the non-moving party, but the burden of proof is on the party who has the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986); *Abarca v. Metropolitan Transit Authority,* 404 F.3d 938, 940 (5th Cir. 2005). Once Movants carry their burden of identifying those portions of pleadings and discovery on file and any affidavits they believe demonstrate the absence of a genuine issue of material fact, the non-movant must set forth specific facts showing there is a genuine issue for trial by either submitting opposing evidentiary documents or referring to evidentiary documents already in the record which demonstrate the existence of a genuine issue of material fact. *Celotex*, 477 U.S. at 324-325; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *Reese v. Anderson*, 926 F.2d 494, 498 (5th Cir. 1991); *Howard v. City of Greenwood*, 783 F.2d 1311, 1315 (5th Cir. 1986) (non-movant "must counter factual allegations by the moving party with specific, factual disputes; mere general allegations are not a sufficient response"); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Conclusory allegations, unsubstantiated assertions or the presence of a scintilla of evidence, do not suffice to create a real controversy regarding material facts. *Lujan*

*v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990); *Hopper v. Frank*, 16 F.3d 92, 97-98 (5th Cir. 1994); *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994).

Exhaustion of Administrative Remedies

The Prison Litigation Reform Act of 1995 (PLRA) requires that a prisoner exhaust all available administrative remedies before filing a § 1983 action in federal court:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a) (Supp. 2000). Exhaustion is required before an inmate brings an action with respect to prison conditions, regardless of the relief offered through administrative procedures. *Booth v. Churner*, 532 U.S. 731, 739 (2001). The United States Supreme Court has explained that the PLRA's exhaustion requirement is mandatory and applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes. See *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Jones v. Bock*, 549 U.S. 199, 204 (2007). The Fifth Circuit Court of Appeals reiterated these principles in *Gonzales v. Seal*, 702 F.3d 785 (5th Cir. 2012), recognizing that "pre-filing exhaustion of prison grievance processes is mandatory." *Id.* at 788. Proper exhaustion is required and is not accomplished "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." *Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006). An inmate's grievance must be sufficiently specific to afford "officials a fair opportunity to address the problem that will later form the basis of the lawsuit." *Johnson v. Johnson*, 385 F.3d 503, 517 (5th Cir. 2004). "It is not enough to merely initiate the grievance process or to put prison officials on notice of a complaint; the grievance process must be carried through to its conclusion." *Walker v. East Miss. Corr. Facility*, 2013 WL 4833901, *2 (S.D. Miss. Sept. 11, 2013) (citing *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001));

*Tompkins v. Holman*, 2013 WL 1305580 (S.D. Miss. Mar. 26, 2013). "The requirement of exhaustion applies regardless of Plaintiff's opinion on the efficacy of the institution's administrative remedy program." *Nealy v. Moore*, 2013 WL 6230107, *3 (S.D. Miss. Nov. 30, 2013) (citing *Alexander v. Tippah Co.*, 351 F.3d 626, 630 (5th Cir. 2003)). Exhaustion "is a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time." *Dillon v. Rogers*, 596 F.3d 260, 272 (5th Cir. 2010).

The Rogers affidavit and the Inmate Handbook [37-1, pp. 1-3, 4-27], [37-2] establish the existence of an administrative grievance procedure at GCRCF, and Coleman acknowledges in his original complaint that the facility had such a procedure. The Inmate Handbook sets out the steps of the procedure including the inmate's filing an initial grievance to the Facility Grievance Officer, *and* the filing of an appeal to the Warden if the inmate is dissatisfied with the Facility Grievance Officer's response. [37-1, pp. 25-27], [37-2, pp. 22-24] Rogers' affidavit and Coleman's jail file establish that Coleman did not complete the steps of the grievance procedure. Rogers' affidavit states Coleman filed one Inmate Request Form but "filed no Inmate Grievance Forms." [37-1, p. 2, ¶p. 7] This is borne out by Coleman's Jail Record which includes only the Inmate Request Form [37-1, p. 56], [37-3, p. 29], and no Inmate Grievance Form. Even if Coleman's Inmate Request were deemed to be a grievance, it would avail him nothing since admits he filed no appeal, *i.e.*, he failed to carry the grievance procedure through to its conclusion. *See Walker*, 2013 WL 4833901 at *2. Furthermore, the undersigned is of the opinion that Coleman's Inmate Request is insufficiently specific since it states merely that Coleman has "a medical situation" he wants to discuss; that he has insurance and if MDOC would drop its probation violation hold, he could bond out and take care of his problem. [37-3, p. 29] See *Johnson*, 385 F.3d at 517. In short, Coleman did not file a proper grievance to

commence the administrative process, did not provide any facts as to any claimed wrongdoing by any Defendant in the Inmate Request that he did file, and filed no appeal to complete the administrative process.

## RECOMMENDATION

Based upon the evidence presented, the undersigned finds Coleman failed to exhaust available administrative remedies prior to filing this lawsuit and recommends that the Defendants' motion for summary judgment be granted and this case, dismissed.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Within 14 days after being served a copy of this Report and Recommendation (R&R), a party may file with the Clerk of Court and serve on the other party/parties written objections to the R&R, specifically identifying the findings, conclusions and recommendations to which he objects. *L.U.Civ.R.* 72(a)(3).  The District Court need not consider frivolous, conclusive, or general objections.  Within seven days after service of objections, the opposing party/parties must either serve and file a response or notify the district judge they do not intend to respond to the objections.  Absent timely objections, one may not attack on appeal any proposed factual finding or legal conclusion accepted by the District Court, except on plain error grounds. *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Signed this the 2nd day of June 2020.

/s/ *Robert H. Walker*
ROBERT H. WALKER
UNITED STAtES MAGISTRATE JUDGE